UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:16-CV-81716-MARRA/MATTHEWMAN

BILIAN HADJIEV, and all similarly
situated individuals,

  Plaintiff,

v.

FRENCHMAN'S CREEK BEACH
& COUNTRY CLUB,
a Florida corporation,

  Defendant.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

  Defendant, Frenchman's Creek, Inc. ("Frenchman's Creek"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, respectfully submits this motion for summary judgment and memorandum of law in support thereof.

**SUMMARY OF ARGUMENT**

  Plaintiff, Bilian Hadjiev, during the relevant time period encompassing Plaintiff's complaint (2013 - 2016), worked for Frenchman's Creek as the Assistant Director of Operations. He also served as the Manager of the Transportation Department. As an exempt employee, pursuant to the executive exemption of the Fair Labor Standards Act ("FLSA"), Plaintiff was paid a salary of a predetermined amount but received no overtime pay for any hours he worked over forty in a workweek. Plaintiff claims that he was improperly classified as exempt and is now

seeking payment of overtime wages that are allegedly owed to him. The overwhelming evidence, however, proves that Plaintiff was properly classified as exempt. As such, summary judgment is warranted.

## FACTUAL BACKGROUND

For purposes of this motion, Frenchman's Creek relies on its Statement of Undisputed Material Facts ("SUMF") pursuant to Local Rule 56.1(a), which is incorporated herein by reference.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is designed to dispose of meritless claims before engaging in a frivolous and costly trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Thus, summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322; *see also Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983) (summary judgment should be granted when the moving party meets its burden in showing the absence of a genuine issue as to any material fact).

In considering a motion for summary judgment, the court is not required to, nor should it, "scour the record in search of the evidence that would defeat" the motion, this duty belongs to the non-moving party alone. *Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp.2d 1314, 1322 (M.D. Fla. 2002) (citing *Celotex*, 477 U.S. at 324). To that end, the non-moving party must file affidavits, depositions, or other documents to persuade the Court that there are material facts in the case that

must be presented to the jury. *Webb, et al. v. Athens Newspapers, Inc.*, 999 F. Supp. 1464, 1466 (11th Cir. 1998). Plaintiff must identify disputed facts that could affect the outcome of his claims under governing law to satisfy the "materiality" requirement, and thereby preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Moreover, "mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." *Louis-Charles v. Sun Sentinel Co.*, 595 F. Supp.2d 1304, 1306 (S.D. Fla. 2008) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).

## ARGUMENT

### I. Plaintiff was an executive employee

The FLSA overtime wage exemptions exclude from the minimum wage and maximum hour requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). According to the Code of Federal Regulations, the term "employee employed in a bona fide executive capacity" means any employee: (1) compensated on a salary basis at a rate of not less than $455 per week…; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R § 541.100. The burden of proving that an employee fits within the executive exemption falls on the defendant. *Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823, 826 (11th Cir. 1988). Here, as demonstrated herein,

Plaintiff satisfies all the requirements and was properly classified as exempt.

### A.     Plaintiff was paid at least $455 per week

In determining whether Plaintiff was a bona fide "executive" employee, the first requirement under § 541.100 is whether he was paid a salary of at least $455 per week. Indeed, two requisites must be established in determining whether an employee is compensated on a salary basis for FLSA purposes: (1) that the employee earned more than $455 per week; and (2) that the employee regularly receives each pay period a predetermined amount constituting all or part of the employee's compensation, which is not subject to reduction because of variations in the quality or quantity of the work performed. *Rooney v. Town of Groton*, 577 F.Supp.2d 513, 523 (D. Mass. 2008). Here, during the relevant time period (from 2013 – 2016), Plaintiff was paid $1,289.60 bi-weekly ($644.80 per week), a predetermined amount, plus commissions earned from the Transportation Department. (SUMF at ¶ 13-14). Plaintiff does not dispute that he earned more than $455 per week, and as such, the first requirement has been met.

### B.     Plaintiff's primary duty was management

The second requirement is whether Plaintiff's primary duty was management of the enterprise. It is undisputed Plaintiff held the positions Assistant Director of Operations and Manager of the Transportation Department. While Plaintiff contends he was not a manager since the majority of those employees he managed were either volunteer drivers or contracted labor, there is no dispute of material fact that: (1) Plaintiff performed "management" duties; and (2) Plaintiff's management duties were his "primary duty."

29 C.F.R. § 541.102, defines the term "management duties," as follows:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; appraising employees' production or sales

records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

Here, Plaintiff's duties can be summarized as follows: (**Operations Department**) supervising employees in the laundry room, locker room, and housekeeping (SUMF at ¶ 18, 22, and 25); directing employees (SUMF at ¶18, 22, and 25); scheduling employees (SUMF at ¶ 18, 22, and 25); approving time-off (SUMF at ¶ 18, 22, and 25); evaluating employees (SUMF at ¶ 18); overseeing personnel to set up and break down staff housing (SUMF at ¶ 18); disciplining employees (SUMF at ¶ 18); performing inventory (SUMF at ¶ 18); ordering supplies using Frenchman's Creek's credit card (SUMF at ¶ 18); working in the lobby, like other managers for purposes of member relations (SUMF at ¶ 18); handling complaints (SUMF at ¶ 18); providing instructions to the contracted labor (SUMF at ¶ 18); interfacing with management for the contracted labor to make sure the work was done and done properly (SUMF at ¶ 18); assuming Director of Operations' responsibilities in his absence, which included reviewing and approving employee time cards as well as attending management meetings (SUMF at ¶ 18); (**Transportation Department**) assigning drivers (SUMF at ¶ 27); confirming information with members (SUMF at ¶ 27); informing members of procedures such as the use of their vehicle for the transportation service (SUMF at ¶ 27); determining amounts to charge members (SUMF at ¶ 27); determining the amount of commissions and how they would be split between Plaintiff and the driver (SUMF at ¶ 27); reviewing rates and methods of payment with members (SUMF at ¶ 27); providing the

member with the driver's contact information (SUMF at ¶ 27); confirming the service with the member and other related information prior to the day of the service (SUMF at ¶ 27); supervising the drivers by ensuring that they adhered to policies and procedures (SUMF at ¶ 27); assisting the drivers in resolving issues (SUMF at ¶ 27); overseeing the drivers for member transportation requests (SUMF at ¶ 27); coordinating and scheduling drivers (SUMF at ¶ 27); creating procedures for the department (SUMF at ¶ 27); handling member complaints (SUMF at ¶ 27); Plaintiff also had the discretion to decide to not use a driver because of an issue between the member and the driver (essentially terminating an employee from the Transportation Department) (SUMF at ¶ 27); (**Kids' Camp**) interviewing prospective employees to work at the Kids' Camp (SUMF at ¶ 29); hiring employees to work at the Kids' Camp (SUMF at ¶ 29); organizing, leading and promoting kids' activities (SUMF at ¶ 29); greeting new arrivals, introducing them to other participants, explaining facility rules and encouraging participation (SUMF at ¶ 29); marketing the Kids' Camp (SUMF at ¶ 29); terminating employees of the Kids' Camp if necessary (SUMF at ¶ 29) (**Members' Services/Social Amenities**) taking the members on outings (SUMF at ¶ 31); giving input regarding the types of outings (SUMF at ¶ 31); developing, marketing, and executing member activities offsite (SUMF at ¶ 31); maintaining records of successes and/or failures with activities to improve future programs (SUMF at ¶ 31); and reviewing contracts for transportation (SUMF at ¶ 31).[1]

The definition of "primary duty" is set forth in 29 C.F.R. § 541.700 as follows:

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary

---

[1] Even though Plaintiff may have been required to adhere to Frenchman's Creek's policies and procedures and report to Gonzalo Navarro, he exercised substantial independent discretion and control over the performance of his duties – acting as a manager. *See* 29 C.F.R. § 541.700(c).  Further, a managerial employee may come within the FLSA's executive exemption even where his discretion is circumscribed by corporate policies or the employee reports to a supervisor. *See Calvo v. B&R Supermarket, Inc.*, 63 F.Supp.3d 1369 1384-85 (S.D. Fla. 2014); *Jackson v. Advanced Auto Parts, Inc.*, 362 F.Supp.2d 1323, 1335-36 (N.D. Ga. 2005).

> duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
> (b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700.

Where executive employees perform concurrent duties of exempt and nonexempt work, § 541.106(a) provides guidance:

> (a) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of §541.100 are otherwise met. Whether an employee meets the requirements of §541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in §541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordering production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.
>
> (b) For example, an assistant manager in a retail establishment may

> perform work such as servicing customers, cooking food, stocking shelves, and leaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.

The decision of whether the duties and activities of employees exclude them from overtime benefits under the FLSA under the "executive exemption" is a question of law to be resolved by the Court. *Icicle Seafoods, Inc. v. Worthineton*, 475 U.S. 709, 714, 106 S. Ct. 1527, 1530 (1986). The following cases are illustrative of why Plaintiff is exempt and summary judgment warranted.

In *Diaz v. Team Oney, Inc.*, 291 Fed. Appx. 947 (11th Cir. 2008), the Eleventh Circuit Court of Appeals affirmed the trial court's entry of summary judgment in the employer's favor on a claim under the FLSA, finding that the employee's primary duty as the Assistant Manager was "management" of a pizza shop, as required to come within the executive exemption from overtime pay. There, the plaintiff contended in his deposition testimony that his "primary responsibility" was to service customers by making and cutting pizzas, routing deliveries of pizzas, greeting customers, and cleaning the store. *Id*. at 949. The plaintiff, an Assistant Manager, contended that the General Manager was in charge of operating the store, and that at the time he was the only one making pizzas. *Id*. However, the court found that the plaintiff's managerial duties "as the highest ranking employee on duty during a majority of his shifts in which he supervised the drivers, counter persons and cooks, apportioned work, made deposits, filled out required forms, interviewed prospective employees, and engaged in local restaurant marketing, were significantly more important to the operation of the restaurant than his non-managerial tasks." *Id*. at 949, citing 29 C.F.R. §541.700(b)(c).

The court went on to specifically hold that "time alone ... is not the sole test, and nothing

in this section requires that the exempt employee spend more than 50 percent of their time performing exempt work ...." *Id*. The court found that the evidence also supported the determination that the employee customarily directed the work of two or more workers at the pizza store so as to come within the executive exemption to overtime pay under the FLSA. *Id*.

Further, although the Assistant Managers reported to a General Manager, who in turn reported to an area supervisor, the court nevertheless held that:

> the mere fact that a chain of management exists in a company does not render all but the highest employee in the chain non-exempt. The mere fact that the manager, and presumably, the supervisor, was ultimately responsible for the store's operations and performance does not mean that the plaintiff, as Assistant Manager, was not in charge of operating the store during his shifts. Assistant Managers, Managers, and Corporate Supervisors can be in charge of a store in different ways and on different levels. As the highest ranking employee during the majority of the time during each of his shifts, plaintiff was supporting the Manager in operating the store by being in charge while the Manager was not present.

*See Diaz*, April 18, 2008 Order on Motion for Summary Judgment p. 14.

Based on the foregoing, the Court in *Diaz* held that the Assistant Manager was sufficiently free from direct supervision to satisfy the "primary duty" factor and entered summary judgment in favor of the employer, which was affirmed on appeal. *Id*., 291 Fed. Appx. at 950.

Similarly, in *Donovan v. Burger King Corp.*, 672 F. 2d 221 (1st Cir. 1982) and *Donovan v. Burger King Corp.*, 675 F. 2d 516 (1st Cir. 1982), the court held that assistant managers at multiple company-owned stores fell within the executive exemption. The Burger King assistant managers performed managerial duties (such as scheduling employees, assigning work, overseeing product quality, handling customer issues, training employees, and performing various record keeping, inventory, and cash reconciliation duties). *Id*., 672 F. 2d at 223. The assistant managers also spent a portion of their time performing many of the same tasks as hourly employees, such as

taking orders, preparing food, and filling orders. *Id.* The court found that the duties of the assistant managers "corresponds quite closely" to the example given in the DOL regulation relating to retail establishments making it clear that an employee can manage while performing other non-exempt work, and that doing the other work does not negate the conclusion that his primary duty was management. *Id.*, 672 F. 2d at 226. The court further held "the person in charge" of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions. *Id.*, 672 F. 2d at 227.

In *Murray v. Stuckey's, Inc.*, 939 F. 2d 614 (8th Cir. 1991), the Eighth Circuit Court of Appeals held that, even if the plaintiff managers of Stuckey's restaurants spent 65-90 percent of their time on non-exempt tasks, the managers were "the on-site employees ultimately responsible for the stores' operations," thus their responsibilities placed them squarely within the executive exemption. *Id*. at 619-20.

Numerous other courts have reached the same conclusion as the courts in *Diaz*, *Stuckey's*, and *Burger King*. *See* e.g., *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268 (S.D. Fla. 2004) (store manager was exempt executive with primary duty of management even though 95 percent of time spent performing non-exempt tasks); *Kastor v. Sam's Wholesale Club,* 131 F. Supp. 2d 862 (N.D. Tex. 2001) (holding manager of bakery department exempt even though he spent up to 90 percent of his time performing the same work as hourly employees and did not have final decision-making authority, where his principal value to the company was as a manager and he was ultimately responsible for daily operations in his department); *Palazzolo-Robinson v. Sharis Mgmt. Corp.*, 68 F. Supp. 2d 1186 (W.D. Wash. 1999) (assistant manager was exempt executive even though she spent more than 50 percent of her time on the floor, pouring coffee, taking out the garbage, and seating customers "never stopped being in charge of the facility"); *Masilionis v.*

*Falley's, Inc.*, 904 F. Supp. 1224, 1229-30 (D. Kan. 1005) (granting summary judgment to employer and holding that local supermarket produce manager was clearly exempt despite performing management duties less than 50 percent of the time because he was in charge of the department and his presence and management duties were necessary to the smooth operation of the department).

In *Severin v. Pasha's Restaurants, Inc.*, 2007 WL 967021 (S.D. Fla. 2007), the court granted the employer's motion for summary judgment in case where the plaintiff was employed as "shift manager" at a restaurant. The court noted that during the plaintiff's shift, she was the highest level employee on site at the restaurant and that she was "in charge" of the store during that time. *Id*. at *3. Despite plaintiff's claim that she spent 75 -80% of her time expediting food orders and performing other non-managerial work, the court found her primary responsibility was management because she was in charge of the store, continuously responsible for supervising employees and performing management duties. *Id*. at 5.

In *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287 (S.D. Fla. 2006), store managers who spent more than 75% of their time performing many of the same tasks as their subordinates, such as straightening shelves, cleaning spills, and operating the cash register, were also determined to be exempt. The court's opinion cited the DOL regulation noting that "[management will still be an employee's primary responsibility if, in the course of performing production of sales work, the employee 'supervises other employees, directs the work of warehouse and deliverymen . . . or performs other management duties as the day-to-day operations require.'" *Id*. at 1301, citing 29 C.F.R. §541.103 (2003).

Similar to the cases set forth above, Plaintiff's primary duty was management even though he might have spent a small portion of his time doing non-exempt tasks. Indeed, Plaintiff

supervised employees in the laundry room, locker room, and housekeeping (SUMF at ¶ 18, 22, and 25); directed employees (SUMF at ¶ 18, 22, and 25); approved time-off (SUMF at ¶ 18, 22, and 25); scheduled employees in these departments (SUMF at ¶ 18, 22, and 25); evaluated employees (SUMF at ¶ 18); oversaw personnel to set up and break down staff housing (SUMF at ¶ 18); disciplined employees (SUMF at ¶ 18); handled complaints (SUMF at ¶ 18); provided instructions to the contracted labor (SUMF at ¶ 18); interfaced with management for the contracted labor to make sure the work was done and done properly (SUMF at ¶ 18); assumed the Director of Operations' responsibilities in his absence, which included reviewing and approving employee time cards as well as attending management meetings (SUMF at ¶ 18); assigned and scheduled drivers (SUMF at ¶ 27); determined amounts to charge members (SUMF at ¶ 27); determined the amount of commissions and how they would be split between Plaintiff and the driver (SUMF at ¶ 27); supervised the drivers by ensuring that they adhered to policies and procedures (SUMF at ¶ 27); oversaw the drivers for member transportation requests (SUMF at ¶ 27); created procedures for the Transportation Department (SUMF at ¶ 27); handled member complaints (SUMF at ¶ 27); Plaintiff also had the discretion to decide to not use a driver because of an issue between the member and the driver (essentially terminating the employee from the Transportation Department) (SUMF at ¶ 27); interviewed prospective employees to work at the Kids' Camp (SUMF at ¶ 29); hired employees to work at the Kids' Camp (SUMF at ¶ 29); marketed the Kids' Camp (SUMF at ¶ 29); terminated employees of the Kids' Camp if necessary (SUMF at ¶ 29); gave input regarding the types of outings (SUMF at ¶ 31); developed, marketed and executed member activities offsite (SUMF at ¶ 31); and reviewed contracts for transportation (SUMF at ¶ 31).

Based on the foregoing undisputed facts, the second requirement has been met.

    **D.**    **Plaintiff customarily and regularly directed the work of two or more employees**

The third requirement is whether Plaintiff customarily and regularly directed the work of two or more other employees.

29 C.F.R §541.701 defines "customarily and regularly" as follows:

> The phrase "customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes normal work and recurrently performed every workweek; it does not include isolated or one-time tasks.

This requirement is clearly met based upon the above undisputed facts. Moreover, the fact that Plaintiff also supervised contracted employees does not change the fact that he customarily and regularly directed the work of two or more persons. Indeed, there were more than two full-time employees in the Operations Department, which Plaintiff supervised, including Maxene Gay and Jean Milien, among others. As such, the third requirement has been met.

### E.     Plaintiff had the authority to hire and fire

The fourth requirement is whether Plaintiff had the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. Plaintiff's responsibilities included selecting and interviewing job applicants for Frenchman's Creek Kids' Camp. Plaintiff also was responsible for, and did, discipline employees and had the ability to terminate those employees working in the Kids' Camp and the Transportation Department as well as provide input for those employees working in the Operations Department. As such, the fourth requirement has been met.

### II.    In the alternative, Plaintiff was administratively exempt

To show that an employee was employed in an administrative capacity, an employer must demonstrate that the employee is: (1) compensated on a salary or fee basis at a rate not less than

$455 per week … (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

### A.    Plaintiff earned more than $455 per week

As stated above in section I (A), Plaintiff was paid $1,289.60 bi-weekly ($644.80 per week), a predetermined amount, plus commissions earned from the Transportation Department. (SUMF at ¶ 13-14). Plaintiff does not dispute that he earned more than $455 per week, and as such, this requirement has been met.

### B.    Plaintiff's primary duty was non-manual labor work directly related to the management or general business operations of Frenchman's Creek

As stated above in section I (B), Plaintiff's primary duties involved non-manual labor related to management or the general business operations of Frenchman's Creek. The regulations provide examples of work that would ordinarily satisfy the "directly related to" requirement, including "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b). Here, Plaintiff performed quality control, purchasing, advertisement, marketing, personnel management, and similar activities. Accordingly, the second requirement has been met.

### C.    Plaintiff's primary duties included the exercise of discretion and independent judgment with respect to matters of significance

Again, as stated in section I (B), Plaintiff's primary duties included the exercise of

discretion and independent judgment. Here, Plaintiff created the Transportation Department along with its policies and procedures, he implemented management policies, he handled member complaints, he developed, marketed and executed member activities, he created the Kids' Camp, which he managed, gave input on member outings, reviewed and entered into contracts for transportation, determined rates members would pay, determined the amount of commissions, how the commissions would be split between Plaintiff and the drivers, decided which drivers to use and whether to use a driver if a member had an issue, established services for members, and created policies and procedures for the Transportation Department, which he helped create. As such, the third requirement has been met, and, in the alternative, Plaintiff is administratively exempt.

### III. Plaintiff is exempt based on a combination of exemptions

The FLSA regulations recognize that an employee may also be exempt from the FLSA's overtime compensation requirements if the employee's primary duty includes a combination of work that qualifies under two or more of the exemptions listed in § 213. 29 C.F.R. § 541.708. Here, based on the undisputed facts set forth in sections I and II herein, Plaintiff performed duties meeting both the executive exemption and the administrative exemption and is therefore exempt under the "combination exemption."

### IV. Plaintiff's overtime calculation, even if owed, is incorrect

In the unlikely event Plaintiff is found to be non-exempt, Frenchman's Creek moves in the alternative for partial summary judgment regarding the computation of overtime. In that regard, Plaintiff contends that he is entitled to straight time plus overtime pay for all hours worked in excess of 40 in a workweek. However, Plaintiff's methodology is contrary to the law.

The correct method for calculating the overtime for an employee who is misclassified as

exempt is the fluctuating workweek method, which calls for dividing the actual hours worked each workweek into the fixed salary. *See* 29 C.F.R 778.114.114(a); *Blackmon v. Brookshire Grocery, Co.*, 835 F. 2d 1135 (5th Cir. 1988).

The fluctuating workweek formula is outlined in 29 C.F.R 778.114(a) as follows:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

The foregoing formula results in a determination of the regular rate of pay for each workweek. The overtime payment for that week is then determined by multiplying all hours over 40 in the workweek by half the regular rate for that workweek. *Blackmon*, 835 F. 2d at 1138. Under the fluctuating workweek method, the employee has already been compensated straight time pay for the hours worked, and the half time component of the overtime is computed based on the employee's hourly rate for the week.

In the Eleventh Circuit, once it has been established that the employee understood that he or she would be paid the same amount each week regardless of the hours worked and the employee was misclassified as exempt, the employer may rectify the deficit by application of the fluctuating workweek formula. *English v. Pharmerica Drug Sys., Inc.*, 2004 U.S. Dist. LEXIS 29900 (M.D. Fla. 2004), citing *Blackmon v. Brookshire Grocery Co.*, 835 F. 2d 1135 (5th Cir. 1988); *Yadav v. Coleman Oldsmobile. Inc.*, 538 F. 2d 1206 (5th Cir. 1976).

In *Torres v. Bacardi Global Brands Promotions*, 482 F. Supp. 2d 1379 (S.D. Fla. 2007), the court held that the appropriate method of computing overtime in a failed exemption case is to divide the employee's salary into all of the hours which is intended to cover all of the employee's working hours. In *Torres*, the plaintiff was paid a fixed salary regardless of the number of hours he worked in a given week. *Id*. at 1181. The court determined that if the plaintiff was determined to be a non-exempt employee, his overtime was to be computed by (1) dividing his weekly salary by the total number of hours worked in each given week (his "regular rate"), and then (2) after determining his regular rate for a given week, the overtime damages would be one half his regular rate multiplied by the number of overtime hours worked in that week. *Id*.

For example, if the jury determines that a plaintiff worked fifty-five (55) hours per week and the plaintiff received a salary of $550.00 per week, plaintiff's hourly rate would be $10.00 per hour. One half of the plaintiff's regular rate ($5.00) multiplied by 15 overtime hours worked in the week would be $5.00 x 15 = $75.00 of weekly overtime. If the plaintiff worked 55 hours per week for one year, the half time owed would be $6,029.40 ($115.95 x 52 weeks).

Here, it is undisputed that Plaintiff received the same salary each week, irrespective of the number of hours worked. (SUMF at ¶ 13). Therefore, if Plaintiff is determined to be a non-exempt employee, Frenchman's Creek requests the Court enter a partial summary judgment for the

computation of overtime damages to be determined based on the fluctuating work week method, in which overtime is computed by (1) dividing Plaintiff's weekly salary by the total number of hours worked in each given week (the "regular rate"), and then (2) after determining the regular rate for a given week, the overtime damages would be one-half the regular rate multiplied by the number of overtime hours worked in that week.

## CONCLUSION

Based on the foregoing undisputed material facts, authority, and arguments, Frenchman's Creek respectfully requests this Court grant its motion for summary judgment, enter judgment in favor of Frenchman's Creek, award Frenchman's Creek attorney's fees and costs as well as all other relief deemed just and proper. In the alternative, if Plaintiff is deemed non-exempt, Frenchman's Creek requests that this Court grant partial summary judgment in favor of Frenchman's Creek regarding the fluctuating workweek method for computation of overtime wage damages.

## CERTIFICATE OF SERVICE

I hereby certify that December 15, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this same day on Alan M. Aaronson, Esq., aaronson@rosenthallevy.com, and dwhite@rosenthallevy.com, Rosenthal, Levy, Simon & Ryles, 1401 Forum Way, Sixth Floor, West Palm Beach, FL 33401, via transmission of Notices of Electronic Filing generated by CM/ECF.

CASE NO.: 9:16-CV-81716-MARRA/MATTHEWMAN

BECKER & POLIAKOFF, P.A.
Attorneys for Frenchman's Creek
625 N. Flagler Drive, 7th Floor
West Palm Beach, FL 33401
Telephone: (561) 655-5444
Facsimile: (561) 832-8987
jdokovna@bplegal.com

By: __Jamie B. Dokovna_____
    Jamie B. Dokovna, Esq.
    Florida Bar No. 592722

ACTIVE: F10883/381692:10364096_1