UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81716-CIV-MARRA

BILIAN HADJIEV,

Plaintiff,

vs.

FRENCHMAN'S CREEK BEACH & COUNTRY
CLUB, a Florida profit corporation,

Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court upon Defendant's Motion for Summary Judgment (DE 41). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background[1]

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in the light most favorable to the non-moving party, for the purpose of this motion, are as follows:

Plaintiff, Bilian Hadjiev ("Plaintiff" "Hadjiev"), is a former employee of Defendant Frenchman's Creek, Inc. ("Defendant," "Frenchman's Creek"). (Bilian Hadjiev Dep. 5, DE 40-1.) Defendant is a residential community located in Palm Beach Gardens. (Gonzalo Navarro Aff. ¶ 2, DE 40-3.) In 2003, Plaintiff began his employment with Defendant as a food and beverage

---

[1] Plaintiff has failed to controvert Defendant's statement of fact. Pursuant to Local Rule 56.1(b) for the Southern District of Florida, undisputed facts set forth by the movant and supported by evidence in the record are deemed admitted. S.D. Fla. L.R. 56.1.

trainee. (Hadjiev Dep. 7-8.) Throughout Plaintiff's tenure, he held the following positions: assistant director of operations, assistant beach club manager, manager of housekeeping, assistant director of operations, night shift manager and assistant manager of the fitness department. (Hadjiev Dep. 10-14; Maxene Gay Dep. 42-44, DE 40-4.) The operative complaint concerns the years 2013 through 2016 when Plaintiff worked in the transportation department and as assistant director of operations. (Hadjiev Dep. 11-16.) During this time, Defendant classified Plaintiff as a manager and exempt from overtime requirements of the Fair Labor Standards Act ("FLSA"). (Hadjiev Dep. 63, 78.)

Plaintiff was paid $35,369.99 in 2013, $34,804.37 in 2014, $35,489.15 in 2015 and $35,000.23 in 2016. (Hadjiev Dep. 92-93.) During this time period, he was paid bi-weekly in the predetermined amount of $1,289.60. (Kirk-Johnson Decl. ¶ 4, DE 40-5.) Plaintiff also received commissions as the manager of the transportation department. (Kirk-Johnson Decl. ¶ 5.)

The operations department includes the "back of the house" operations, which includes laundry facilities, housekeeping, locker room service, kitchen service, and portions of the valet parking, transportation and maintenance departments. (Navarro Decl. ¶ 4.) The operations department has approximately 60 employees, 30 of which are employed directly by Frenchman's Creek and the remaining are contracted labor. (Navarro Decl. ¶ 5.) During the relevant time, Gonzalo Navarro served as the director of operations and Plaintiff was "his assistant (essentially an assistant manager)." (Navarro Decl. ¶¶ 2-3, 6.)

With respect to the operations department, Plaintiff created employee schedules,[2]

---

[2] Plaintiff testified that he would schedule employees "with the guidelines" of Mr. Navarro. (Pl. Dep. 54.)

2

performed inventory, purchased items,[3] handled complaints, directed employees, provided instructions to the contracted labor, interfaced with management about the contracted labor, disciplined employees, and contracted with companies to provide transportation to members of the Club. (Navarro Decl. ¶ 7.) Plaintiff also approved time off. (Pl. Dep. 53; Gay Dep. 19.) When Mr. Navarro was off from work, Plaintiff would oversee the operations department and personnel, and attend management meetings. (Navarro Decl. ¶ 8.)

Maxene Gay is a former Frenchman's Creek employee. During the relevant time period, Mr. Gay worked as a locker room attendant, in housekeeping, and occasionally worked in the transportation department. (Gay Dep. 8-10.) Mr. Gay describes Plaintiff as his "boss" and "manager." (Gay Dep. 17.) Plaintiff was the transportation manager and would assign Mr. Gay to drive members of the Club. (Gay Dep. 21.) At times, Plaintiff would also direct Mr. Gay to do work in the locker room. (Gay Dep. 28.)

Jean Milien is employed by Frenchman's Creek. (Milien Aff. ¶ 2.) He previously worked as a driver in the transportation department and Plaintiff was one of his managers. (Milien Aff. ¶¶3-5.) As his manager, Plaintiff made Mr. Milien's schedule, supervised his work, provided him direction, took inventory, ordered supplies, approved time off and handled member complaints. (Milien Aff. ¶¶ 6-7.)

Plaintiff's job duties in the transportation department included: assigning drivers, confirming information with members, informing members of procedures, reviewing rates and methods of payment with members, providing members with the driver's contact information,

---

[3] Plaintiff testified that he did not use the company credit card for ordering supplies whereas Mr. Gay testified that Plaintiff did use the company credit card. (Pl. Dep. 51; Gay Dep. 51.) Plaintiff also testified that Mr. Navarro decided how many supplies to order. (Pl. Dep. 55.)

3

confirming service with members, communicating with drivers about expectations, assisting drivers in resolving issues, overseeing drivers for member transportation requests, coordinating and scheduling drivers, creating procedures for the department and handling member complaints. (Pl. Dep. 19, 22, 27, 74, 82-85, 107-08; Navarro Decl. ¶ 11; Milien Decl. ¶ 7; Gay Dep. 48; Ex. 4 to Ex. A, DE 40-2.)

With respect to the Kids' Camp at the club, Plaintiff had the following duties: input into hiring decisions, organizing and promoting the kids' activities, greeting new arrivals, introducing them to other participants, explaining facility rules, encouraging participation and marketing the camp. (Pl. Dep. 73; Gay Dep. 29.)

With respect to members' services, Plaintiff performed tasks related to taking members on outings and events, such as museums, baseball games, and restaurants. Plaintiff provided input regarding these trips and would help develop, market and execute these trips. Plaintiff would also maintain records about the activities and review the transportation contracts. (Pl. Dep. 27-28, 70-71, 74.) Plaintiff testified that most of the guidelines for the trips were given to him by the general manager or his direct manager and he was encouraged to make suggestions. (Pl. Dep. 28, 98.) Plaintiff's manager would review any agreement from the company that provided transportation for Defendant, and Plaintiff would need his manager's approval to retain a transportation company's service. (Pl. Dep. 30.) That manager would use his own company credit card for these expenses. (Pl. Dep. 31.)

Defendant moves for summary judgment on the basis that Plaintiff was properly classified as an exempt employee under the FLSA pursuant to the executive exemption, or alternatively, administratively exempt from the overtime requirements of the FLSA. Defendant

also contends that Plaintiff's overtime calculation, if owed, is incorrect. Plaintiff responds that there is a genuine dispute of material fact as to whether Defendant properly classified Plaintiff's employment status as non-exempt.

II. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. When the nonmoving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991).

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

Plaintiff seeks a recovery of unpaid wages pursuant to the FLSA. Under the FLSA, employers are required to compensate employees at a rate of one and one-half times their regular rate for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Employees employed in a bona fide executive, administrative, or professional capacity are exempt from this requirement. 29 U.S.C. § 213(a)(1). An "employee employed in a bona fide executive exemption" is defined as (1) compensated on a salary basis of not less than $455.00 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing,

advancement, promotion or any other change of status of other employees are given particular weight.  29 C.F.R. § 541.100.  The burden of proving that an employee fits into the executive exemption falls on the employer.  Brock v. Norman's Country Market, Inc., 835 F.2d 823, 826 (11th Cir. 1988).

The Court begins by noting that Plaintiff only challenges that his primary duty was management.[4]  Specifically, Plaintiff contends that, in the transportation department, he was under the immediate supervision of Mr. Navarro and that he had no authority to bind Defendant in contracts with vendors or to schedule employees.  With respect to the operations department, Plaintiff claims he only attended the managerial meetings when Mr. Navarro was unavailable and would split this responsibility with another employee.  Plaintiff also claims that he ordered supplies and scheduled employees only with Mr. Navarro's approval.  Lastly, with respect to members' services, Plaintiff simply made suggestions regarding activities for members, but had no control whether his suggestions were implemented.

"[M]erely having the title 'manager' is not talismanic, and the Court must still engage in a fact-specific inquiry to determine whether Plaintiff's most critical duties to the enterprise were his exempt managerial duties."  Rutenberg v. Boynton Carolina Ale House, LLC, No. 09-80409-CIV, 2010 WL 135100, at *3 (S.D. Fla. Jan. 8, 2010), opinion clarified, No. 09-80409-CIVMARRA, 2010 WL 541622 (S.D. Fla. Feb. 9, 2010) (citing Rodriguez v. Farm

---

[4] For the purposes of a complete record, the Court observes that, with respect to weekly pay, the undisputed record evidence shows that Defendant paid Plaintiff $644.80 per week.  Next, the evidence, which Plaintiff does not dispute, demonstrates that Plaintiff customarily and regularly directed the work of Mr. Gay and Mr. Millien.  Lastly, with respect to authority to hire and fire, Plaintiff provided input about hiring employees for the Kids' Club.

Stores Grocery, Inc., 518 F.3d 1259, 1264 (11th Cir.2008) ("When it comes to deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details.")).

An executive employee's "primary duty" is management of the enterprise for which he or she works. 29 C.F.R. § 541.100(a).  The Department of Labor ("DOL") regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs" but explains that the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).

The DOL regulations give examples of activities that are managerial in nature:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Here, the undisputed record evidence demonstrates that Plaintiff performed the following managerial duties: scheduled employees, performed inventory, purchased items, handled complaints, disciplined employees, approved time off, assigned employees to particular tasks, directed employee work, interfaced with management about the contracted labor, provided information to club members, made hiring decisions, assisted drivers in resolving issues, created procedures in the transportation department and marketed a camp for children.  Plaintiff helped develop and market

trips for club members, maintained records about these activities and reviewed transportation contracts. Nonetheless, Plaintiff argues that he was under the immediate supervision of Mr. Navarro and therefore was not an exempt employee. In other words, Plaintiff claims he lacked relative freedom from direct supervision.

The Court disagrees. Even when an assistant manager reports to a general manager, an assistant manager can still be an exempt executive employee:

> The mere fact that a chain of management exists in a company does not render all but the highest employee in the chain non-exempt. The mere fact that the manager (and presumably the supervisor) was ultimately responsible for the store's operations and performance does not mean that [the p]laintiff, as Assistant Manager, was not in charge of operating the store during his shifts. Assistant Managers, Managers, and corporate supervisors can be in charge of a store in different ways and on different levels. As the highest ranking employee during the majority of time during each of his shifts, Plaintiff was supporting the manager in operating the store by being in charge while the manager was not present.

Diaz v. Team Oney, Inc., No. 07-21573-CIV, 2008 WL 9463871, at *8 (S.D. Fla. Apr. 29, 2008), aff'd, 291 F. App'x 947 (11th Cir. 2008); see also Donovan v. Burger King Corp., 672 F.2d 221, 223-26 (1st Cir. 1982) (assistant managers who performed managerial duties and who enjoyed decision-making commensurate with the manager are exempt employees); Calvo v. B & R Supermarket, Inc., 63 F. Supp. 3d 1369, 1385 (S.D. Fla. 2014) ("[t]he fact that [the p]laintiff adhered to instructions and guidelines set by her immediate supervisor . . . in fulfilling her managerial responsibilities does not alter the analysis. . . so long as [the p]laintiff's primary duty is management."); Jackson v. Advance Auto Parts, Inc., 362 F. Supp. 2d 1323, 1335 (N.D. Ga. 2005) ("the fact that Plaintiffs had to adhere to certain guidelines or in certain instances obtain the Store Manager's approval does not diminish Plaintiffs' discretionary powers"); Kastor v. Sam's Wholesale Club, 131 F. Supp. 2d 862, 867 (N.D.

Tex. 2001) ("If final decision-making authority were the test for determining whether a person was an executive or administrative employee, one would rarely, if ever, qualify as such an employee under the regulations").

Thus, the Court finds, as a matter of law, that Plaintiff's primary duty was management. As such, the executive exemption applies and Plaintiff is exempt from the FLSA overtime requirement.[5] Summary judgment is granted for Defendant.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 41) is **GRANTED**. The Court will separately enter judgment for Defendant.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of February, 2018.

_____
KENNETH A. MARRA
United States District Judge

---

[5] Based on this ruling, the Court will not address Defendant's remaining arguments.